1 F.Supp.2d 986 (1998)
Jeffrey Lane TOKAR, Petitioner,
v.
Michael BOWERSOX, Respondent.
No. 4:96CV2255 CDP.
United States District Court, E.D. Missouri, Eastern Division.
March 19, 1998.
*987 *988 *989 *990 Michael J. Gorla, St. Louis, MO, Elizabeth Unger Carlyle, Lees Summit, MO, for Jeffrey Lane Tokar, petitioner.
Frank A. Jung, Assistant Attorney General, Jefferson City, MO, for Michael Bowersox, respondent.

MEMORANDUM AND ORDER
PERRY, District Judge.
Before the Court is Jeffrey Lane Tokar's petition for a writ of habeas corpus under 28 U.S.C. § 2254, and his request for an evidentiary hearing and for funds for an expert witness. For the reasons that follow, the Court will deny the petition for writ of habeas corpus and the related motions.
Petitioner Jeffrey Lane Tokar was sentenced to death for the murder of Johnny Douglass. Douglass was killed with his own shotgun on March 11, 1992, when he and his two children interrupted a burglary at their rural Audrain County, Missouri, home.
The guilt phase of petitioner's trial began on Monday, May 3, 1993, and lasted five days, with jury selection taking two days. Among the witnesses who testified at the trial were petitioner's girlfriend/accomplice Sandra Stickley, who testified that although she did not witness the shooting, she was assisting petitioner in the burglary of the Douglass home when the victim and his children arrived. Stickley testified that petitioner loaded the shotgun and walked, gun in hand, toward the garage. She heard conversation between the victim and petitioner and heard two gunshots; she testified that petitioner later told her he had killed the victim. Jarad Douglass, petitioner's eight year old son, identified petitioner as the man he saw pointing the gun at his father immediately before he was killed, and identified petitioner's car as the one the family discovered parked in their drive when they returned home and surprised the intruders. Mr. Douglass's five year old daughter, who was standing next to her father when he was *991 shot, did not testify. The state called sixteen witnesses and defendant called nine witnesses during the guilt phase of the trial. On Friday, May 7, 1993, the jury found petitioner guilty after hearing evidence for three days and deliberating for approximately three hours.
The penalty phase of the trial was conducted on Saturday, May 8, 1993. The state called six witnesses during the penalty phase, and defendant called eight witnesses. The jury then recommended that petitioner be put to death, after deliberating for two hours and fifteen minutes. After denying petitioner's motion for a new trial, the trial court entered a sentence of death.
Petitioner filed a pro se motion for post-conviction relief under Missouri Supreme Court Rule 29.15. With assistance of counsel, petitioner filed an amended motion and request for an evidentiary hearing, and a hearing was held on December 12, 1994. Petitioner was not permitted to appear at this hearing, and refused to testify at his deposition prior to the hearing. On February 10, 1995, the court denied petitioner's motions for post-conviction relief. Appeals from this judgment and from the denial of petitioner's motion for a new trial were consolidated to the Missouri Supreme Court, which has exclusive appellate jurisdiction over cases in which a sentence of death is imposed. On March 26, 1996, that court entered its judgment affirming petitioner's conviction, the sentence, and the denial of his post-conviction relief motion. State v. Tokar, 918 S.W.2d 753 (Mo. banc 1996). Subsequently, the court denied petitioner's motions for rehearing and to recall the mandate. The United States Supreme Court denied certiorari on October 15, 1996. ___ U.S. ___, 117 S.Ct. 307, 136 L.Ed.2d 224 (1996).
Petitioner now seeks federal habeas corpus relief, raising the following grounds:
(1) Petitioner was denied effective assistance of counsel at trial and sentencing as follows:
(a) Counsel failed to object to evidence obtained when petitioner was arrested on the ground that there was no probable cause to arrest petitioner, no written probable cause statement supported the arrest warrant, the affidavit in support of the search warrant did not provide probable cause and contained material misstatements of fact, and no exigent circumstances justified the warrantless arrest.
(b) Counsel failed to object to the following improper statements or conduct by the prosecutor during the guilt and penalty phases:
(i) The prosecutor stated that the jurors should pray that their children should not have to experience what the victim's children went through.
(ii) The prosecutor expressed his personal opinion that the death penalty was warranted.
(iii) The prosecutor stated that petitioner, who did not testify, failed to show remorse.
(iv) The prosecutor stated that petitioner's accomplice, his girlfriend, was "not a murderer," and would serve twenty years in prison.
(v) The prosecutor personally vouched for the credibility of petitioner's accomplice.
(vi) The prosecutor stated that petitioner killed the victim as he was begging for his children's lives in their presence, which misstated the evidence.
(vii) The prosecutor stated that the jury was entitled to wreak upon petitioner the vengeance which the victim's family desired.
(c) Counsel failed to investigate and present evidence that the testimony of the state's witnesses as to petitioner's whereabouts was inconsistent with his presence at the murder scene at the time of the crime.
(d) Counsel failed to object to evidence of identification from an impermissibly suggestive line-up.
(e) Counsel failed to object to the following improper conduct of the prosecutor during his opening statement:

*992 (i) The prosecutor stated that the victim was shot in front of his children, when no evidence was presented to support this.
(ii) The prosecutor repeated three times, "We've got the right guy."
(iii) The prosecutor stated that the state had evidence that a tennis shoe print taken at the scene matched petitioner's shoes, although the state's expert was unable to testify to that effect.
(iv) The prosecutor stated that the state had evidence that petitioner had been seen "only a couple of miles" from the victim's home, when the actual distance was twenty-two miles.
(v) The prosecutor misquoted a statement made by petitioner's accomplice concerning what petitioner had told her about the crime, and thus possibly caused the jury some misapprehension on the issue of deliberation.
(f) Counsel failed to investigate and present mitigating evidence that petitioner was suffering from paranoid personality disorder at the time of the crime.
(g) Counsel failed to investigate and present evidence that petitioner was suffering from paranoid personality disorder at the time of trial, which rendered him incompetent to proceed.
(2) Petitioner's arrest was invalid under the fourth amendment.
(3) The following statements made by the prosecutor in his opening statement were improper and denied petitioner due process of law and the right to be free from cruel and unusual punishment in violation of the eighth and fourteenth amendments:
(a) The prosecutor stated that the victim was shot in front of his children, although no evidence was presented that this was the case.
(b) The prosecutor thrice said, "We've got the right guy."
(c) The prosecutor stated that the state had evidence that a tennis shoe print taken at the scene matched petitioner's shoes, although the state's expert was unable to testify to that effect.
(d) The prosecutor stated that the state had evidence that petitioner had been seen "only a couple of miles" from the victim's home, when the actual distance was twenty-two miles.
(e) The prosecutor misquoted a statement made by petitioner's accomplice concerning what petitioner had told her about the crime, and thus possibly caused the jury some misapprehension on the issue of deliberation.
(4) The following statements made by the prosecutor in his final argument denied petitioner due process of law and the right to be free from cruel and unusual punishment in violation of the eighth and fourteenth amendments:
(a) The prosecutor told the jurors that they should pray that their children should not have to experience what the victim's children went through.
(b) The prosecutor expressed his personal opinion that the death penalty was warranted.
(c) The prosecutor stated that petitioner, who did not testify, failed to show remorse.
(d) The prosecutor stated that petitioner's accomplice, his girlfriend was "not a murderer," and would serve twenty years in prison.
(e) The prosecutor personally vouched for the credibility of the petitioner's accomplice.
(f) The prosecutor stated that petitioner killed the victim as he was begging for his children's lives in their presence, which misstated the evidence that the victim was on his feet when the final shot was fired and the children were not present.

*993 (g) The prosecutor told the jury that it was entitled to wreak upon petitioner the vengeance which the family of the victim desired.
(5) The prosecutor's use of an analogy about a hallway with three doors during jury selection limited the jurors' consideration of mitigating evidence at sentencing, and deprived the petitioner of due process of law and subjected him to cruel and unusual punishment in violation of the eighth and fourteenth amendments.
(6) The admission of evidence that the petitioner has AIDS violated his rights to due process of law and to be free from cruel and unusual punishment in violation of the eighth and fourteenth amendments.
(7) The trial court's instruction to the jury that it must consider evidence in aggravation before considering evidence in mitigation violated petitioner's rights to due process of law and to be free from cruel and unusual punishment in violation of the eighth and fourteenth amendments.
(8) The trial court's refusal to instruct the jury as to specific nonstatutory mitigating circumstances while instructing the jury as to specific nonstatutory aggravating circumstances violated petitioner's right to be free from cruel and unusual punishment in violation of the eighth and fourteenth amendments.
(9) The instruction concerning the aggravating circumstance of "outrageously and wantonly vile, horrible, and inhuman" violated petitioner's rights to be free from cruel and unusual punishment and to due process of law in violation of the eighth and fourteenth amendments.
(10) The holding of the Missouri Supreme Court that if one valid statutory aggravating circumstance is found, the death sentence may stand violated petitioner's rights to be free from cruel and unusual punishment and to due process of law in violation of the eighth and fourteenth amendments.
(11) The application of the Missouri Supreme Court of the state statute mandating proportionality review of death sentences violated petitioner's rights to be free from cruel and unusual punishment and to due process of law in violation of the eighth and fourteenth amendments.
(12) The petitioner was denied effective assistance of appellate counsel in that:
(a) Appellate counsel failed adequately to raise the issue of ineffective assistance of trial counsel for the latter's failure to request a competency hearing.
(b) Appellate counsel failed adequately to raise the issue of the invalidity of petitioner's arrest under the fourth amendment.
(c) Appellate counsel failed to request the Missouri Supreme Court to review the unobjected-to comments of the prosecutor in final argument for plain error.
(d) Appellate counsel failed to make any argument on the statutory proportionality review required by Missouri law.
(e) Appellate counsel failed to present adequately the issue that petitioner's incompetence during the post-conviction proceeding rendered that proceeding invalid.
(f) Appellate counsel failed to present adequately the issue that trial counsel was ineffective for failing to present evidence that exculpated petitioner.
(13) Petitioner was incompetent to proceed at trial.
(14) Petitioner was incompetent to assist his counsel during his post-conviction hearing, and therefore the determinations in that proceeding are not entitled to deference by this Court, and petitioner cannot be faulted for omitting issues in that proceeding.
Respondent acknowledges that petitioner has exhausted all his state remedies either by properly presenting the issues to the *994 courts of the State of Missouri and receiving adverse judgments for purposes of 28 U.S.C. § 2254(b) and (c) or by procedurally defaulting on the state remedies otherwise available to him.

Ground 1: Ineffective Assistance of Trial Counsel
The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show his counsel's performance fell below professional standards and that his defense suffered prejudice as a result. Boliek v. Bowersox, 96 F.3d 1070, 1073 (8th Cir. 1996) (citing Strickland, 466 U.S. at 688, 694), cert. denied, ___ U.S. ___, 117 S.Ct. 2439, 138 L.Ed.2d 199 (1997). In evaluating the performance prong of the Strickland test, the basic inquiry is "whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688. Rather than second-guessing counsel's actions with the benefit of hindsight, the reviewing court must examine counsel's conduct with a high degree of deference. Id. at 689. Counsel's performance was prejudicial if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Sherron v. Norris, 69 F.3d 285, 290 (8th Cir.1995) (quoting Strickland, 466 U.S. at 694). The Court need not address the adequacy of counsel's performance if petitioner cannot establish prejudice. Pryor v. Norris, 103 F.3d 710, 713 (8th Cir.1997). Petitioner raises seventeen claims of ineffective assistance of trial counsel in his first ground for relief.

(a) Probable Cause to Arrest

Petitioner's first claim of ineffective assistance of trial counsel is that counsel failed to object to evidence obtained when petitioner was arrested on the ground that there was no probable cause to arrest petitioner, no written probable cause statement supported the arrest warrant, the affidavit in support of the search warrant did not provide probable cause and contained material misstatements of fact, and no exigent circumstances justified petitioner's warrantless arrest. Petitioner asserts that absent the warrant, the police would not have discovered the identity or whereabouts of Sandra Stickley, who was with him at the time of his arrest at his grandmother's house.
Respondent claims that this claim is procedurally barred in that petitioner failed to raise it in his appeal from the motion court's denial of his post-conviction relief motion. Respondent is incorrect. In fact, this claim was the first point in petitioner's brief to the Missouri Supreme Court. Even if the claim were procedurally defaulted, the fact that the state supreme court reached the merits of the issue permits federal habeas review. See Bannister v. Armontrout, 4 F.3d 1434, 1441 (8th Cir.1993), cert. denied, 513 U.S. 960, 115 S.Ct. 418, 130 L.Ed.2d 333 (1994).
The motion court dismissed the claim in one sentence, stating, "The movant offers no evidence, and the Court is aware of none, indicating improper procedures in issuance of the arrest warrant." The Missouri Supreme Court found that because there was probable cause to arrest petitioner, petitioner's trial counsel could not be ineffective for not objecting to the arrest warrant. The court adopted a "totality of the circumstances" approach, listing the following: (1) witnesses had identified a yellow station wagon as the vehicle driven by the murderer, and stated that the suspect had been with a white female at the time of the murder; (2) the sheriff's office knew that petitioner had been stuck in a ditch with a white female in a yellow station wagon near Centralia several days before the murder; (3) the victim was killed in the course of a burglary and petitioner had prior arrests for burglary and assault; (4) additional information existed that petitioner preferred to burglarize earth contact homes and to pack items into pillowcases the same modus operandi used by the suspect. The court stated, "All of these circumstances demonstrate there was probable cause to arrest Tokar."
The fourth amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation," *995 U.S. Const. amend. IV, and it applies to arrest as well as search warrants. Payton v. New York, 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). It is well-established that under the amendment, an arrest warrant can issue only upon a truthful factual showing sufficient to constitute probable cause. Burk v. Beene, 948 F.2d 489, 494 (8th Cir.1991). Although fourth amendment claims are not cognizable on habeas review, Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the Supreme Court has held that a petitioner may premise an ineffective assistance of counsel claim on counsel's failure to bring a fourth amendment claim. Kimmelman v. Morrison, 477 U.S. 365, 383, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). In other words, a meritorious fourth amendment claim cannot warrant the granting of habeas relief, but it may establish ineffective assistance of counsel. Id. at 382.
In this case, the state admitted in its brief to the Missouri Supreme Court that the affidavit supporting the application for the arrest warrant was not in the legal file. In fact, it appears that there was no affidavit whatsoever. The criminal docket sheet contains the following entry: "This cause now comes on before Associate Circuit Judge Linda R. Hamlett and upon finding that sufficient facts have been stated in the Complaint to show probable cause that Jeffrey Lane Tokar committed a felony, a warrant for his arrest is ordered issued with NO BOND ENDORSED." When one looks to the complaint, however, no factual showing can be found. The complaint contains nothing other than the bald assertion of the Audrain County Prosecuting Attorney that "according to information and belief," petitioner "knowingly killed John Douglass by shooting him in the face with a shotgun at close range." The record is silent as to whether the prosecuting attorney also orally related facts to support the complaint. The Court will therefore assume that petitioner had a valid fourth amendment claim. See 28 U.S.C. § 2254(d)(1). The question then is, was petitioner's trial counsel ineffective for not raising this claim?
The exclusionary rule requires that evidence obtained directly or indirectly as a result of the government's violation of the Fourth Amendment may not be introduced by the prosecution at trial, at least for purposes of providing direct proof of the defendant's guilt. Mapp v. Ohio, 367 U.S. 643, 654, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). However, under the inevitable discovery exception to the rule, a court may admit illegally obtained evidence if that evidence inevitably would have been discovered through independent lawful means. Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); United States v. Dickson, 64 F.3d 409, 411 (8th Cir.1995) (finding inevitable discovery exception applicable to illegal search of defendant's apartment where officers would inevitably have obtained a search warrant for the apartment based on testimony of defendant's co-conspirator), cert. denied, 516 U.S. 1064, 116 S.Ct. 747, 133 L.Ed.2d 695 (1996).
Daniel Miller, a farmer in Audrain County, testified that on March 7, a few days before the murder, a young man and woman came to the door of his house and asked his help in pulling their car from a ditch. Miller pulled them out using his tractor. After the vehicle was back on the road, the young man asked Miller what he owed him. When Miller asked for five dollars, the young man was unable to produce a billfold. Miller then asked him whether he was driving without a license. The young man showed Miller a license renewal slip, which listed petitioner's name, date of birth, and social security number. Miller, a former part-time police officer and father of the county sheriff, jotted down this information, as well as the vehicle's make and license number. A few days later, when Miller learned that the police were looking for a yellow station wagon in connection with the Douglass murder, he notified the sheriff (his son) of the March 7, incident, including the fact that a woman was with petitioner. In her testimony, Stickley confirmed Miller's account of the events that took place on March 7, and indicated that she was petitioner's companion on that date.
Other evidence also shows that the police would have quickly located Stickley with or without the allegedly defective arrest warrant. Jarad Douglass, the victim's son, who *996 was present when the murder occurred, testified that at the time of the murder, he saw a woman in the house. Police therefore knew that the murderer had a female accomplice. Stickley was living with petitioner at his grandmother's house at the time of the murder. It is reasonable to assume that people saw the two together. For example, Stickley stated that when she applied for a job as a housekeeper at a Columbia, Missouri, motel, petitioner accompanied her and joined her in watching a training video. Larry McCray, a captain with the Boone City Sheriff's Department, testified that he interviewed Betty Caudle, apparently an employee of the same motel, who told him that a thin blonde man had watched the video with Stickley. The motel's work records, which were admitted into evidence, showed that Stickley listed "Jeff" as a reference. Stickley testified that on the day of the murder, petitioner picked her up at the motel. McCray testified that Caudle told him that the same blonde man who viewed the video with Stickley also came to pick Stickley up on the day of the murder. Caudle therefore clearly would have been able to link Stickley with petitioner.
In short, even without the allegedly defective arrest warrant, police would have known that a woman was with petitioner at the scene of the crime, and would have been able to locate at least two witnesses who had seen petitioner with Stickley both the day of the murder as well as a few days before the murder. The Court concludes that the police would have found Stickley even if she had not been with petitioner at the time of his arrest on the invalid warrant. Thus, even assuming that petitioner's fourth amendment claim had some validity, petitioner suffered no prejudice by counsel's failure or decision not to raise this claim. Stickley would have been available to testify against him regardless.

(b)(iv)-(vii), (c), and (e)(i)-(v) Procedurally Barred Claims

Petitioner raises a number of other ineffective assistance of trial counsel claims which respondent contends are procedurally defaulted. Petitioner concedes that claims (1)(b)(iv)-(vii) were not presented to the motion court. Petitioner further concedes that claims (1)(e)(i)-(v) and (1)(c) were not "initially briefed" to the Missouri Supreme Court, but contends that they were raised in a timely motion for rehearing and in a motion to recall the mandate.
A federal habeas petitioner must exhaust his state remedies and fairly present his federal claims to the state courts before he is entitled to federal habeas relief. Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir.)(en banc), cert. denied, 517 U.S. 1215, 116 S.Ct. 1838, 134 L.Ed.2d 941 (1996). To avoid procedural default, the petitioner must have presented his claims at each step of the judicial process in state court. Jolly v. Gammon, 28 F.3d 51, 53 (8th Cir.) (citing Benson v. Missouri, 611 S.W.2d 538, 541 (Mo.Ct.App. 1980)), cert. denied, 513 U.S. 983, 115 S.Ct. 462, 130 L.Ed.2d 370 (1994). In all cases in which a petitioner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the petitioner can demonstrate cause for and actual prejudice as a result of the alleged violation of federal law, Shigemura v. Groose, 45 F.3d 250, 252 (8th Cir.), cert. denied, 516 U.S. 855, 116 S.Ct. 157, 133 L.Ed.2d 101 (1995), or can demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); Abdullah, 75 F.3d at 411.
"In Missouri, ineffective assistance of trial counsel claims cannot be raised on direct appeal, even where the record is sufficient to permit review, and may only be raised in a Rule 29.15 proceeding." Lowe-Bey v. Groose, 28 F.3d 816, 819 (8th Cir.), cert. denied, 513 U.S. 1061, 115 S.Ct. 674, 130 L.Ed.2d 606 (1994). The failure to raise an ineffective assistance of trial counsel claim in a motion for post-conviction relief raises a procedural bar to pursuing that claim in federal court. Foster v. Delo, 39 F.3d 873, 880 (8th Cir.1994) (en banc), cert. denied, 514 U.S. 1075, 115 S.Ct. 1719, 131 L.Ed.2d 578 (1995). Petitioner failed to raise claims *997 (1)(b)(iv)-(vii) in his Rule 29.15 motion, and has therefore defaulted on these claims.
With respect to claims (1)(e)(i)-(v) and (1)(c), petitioner argues that these claims are not defaulted because he raised them in a timely motion for rehearing and in a motion to recall the mandate. This is incorrect. Under Missouri law, it is well settled that an appellate court will not consider issues raised in a motion for rehearing but not in the original brief. Irwin v. Globe-Democrat Publishing Co., 368 S.W.2d 452, 458(Mo.), cert. denied, 375 U.S. 908, 84 S.Ct. 198, 11 L.Ed.2d 147 (1963); Graf v. Wire Rope Corp., 861 S.W.2d 588, 592 (Mo.Ct.App.1993). As for a motion to recall the mandate, the Eighth Circuit has made clear that this procedural device "is a proper means of preserving an issue for habeas review only in very limited circumstances." Sweet v. Delo, 125 F.3d 1144, 1150 (8th Cir.1997); Nave v. Delo, 62 F.3d 1024, 1031 (8th Cir.1995), cert. denied, 517 U.S. 1214, 116 S.Ct. 1837, 134 L.Ed.2d 940 (1996). Those circumstances are limited to two: (1) claims of ineffective assistance of appellate counsel, and (2) claims that the decision of a lower appellate court "`directly conflicts with a decision of the United States Supreme Court upholding the rights of the accused.'" Nave, 62 F.3d at 1031 (quoting Missouri v. Simpson, 836 S.W.2d 75 (Mo.Ct.App.1992)). The latter circumstance is further limited to situations in which "an appellate court's decision is contradicted by subsequent developments in the law that would be applicable in the movant's case." Id. at 1032. The Court concludes that federal habeas review of petitioner's claims (1)(e)(i)-(v) and (1)(c) is procedurally barred unless he falls within either the "cause and actual prejudice" or "miscarriage of justice" exceptions that permit such review.
To demonstrate cause, petitioner must show that "some objective factor external to [his] defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Examples of such impediments include "a showing that the factual or legal basis for a claim was not reasonably available to counsel," or that interference by government officials made compliance impossible. Id.
The miscarriage of justice exception requires review of a procedurally barred claim only in the extraordinary case where a fundamental miscarriage of justice would otherwise result. Bowman v. Gammon, 85 F.3d 1339, 1346 (8th Cir.1996), cert. denied, ___ U.S. ___, 117 S.Ct. 1273, 137 L.Ed.2d 350 (1997). To fit within this extremely narrow exception, a petitioner must make a showing of actual innocence. Schlup v. Delo, 513 U.S. 298, 321, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). This showing requires the petitioner to support his allegations of constitutional error with new reliable evidence that was not presented at trial, and to establish that given this new evidence, it is more likely than not that no reasonable juror would have convicted him. Weeks v. Bowersox, 119 F.3d 1342, 1351 (8th Cir.1997) (en banc).
Petitioner fails to satisfy either exception to procedural bar. Petitioner argues cause only as to claims (1)(b)(iv)-(vii). He claims that he was suffering from a mental disease at the time of his post-conviction proceeding and thus was unable to fulfill the requirements of the rule. This cannot constitute cause, however, because claims (1)(b)(iv)-(vii) all concern statements made by the prosecutor to which petitioner believes his counsel should have objected. The basis for these claims was apparent on the face of the record, and they therefore cannot be said to involve some factor external to the defense. Petitioner cannot show cause, and makes no claim that he is "actually innocent" of the murder for which he was convicted. He thus fails to qualify for the miscarriage of justice exception.

(b)(i)-(iii) Prosecutor's Improper Arguments

Petitioner also raises three ineffective assistance of trial counsel claims, (1)(b)(i)-(iii), concerning counsel's failure to object to improper arguments made by the prosecutor that are not procedurally barred. The statements are as follows:
(i) In his closing argument in the penalty phase, the prosecutor stated, "Ladies *998 and gentleman, when you go home tonight the first thing you are going to do is you are going to snatch up your kids and you're going to squeeze them as tight as you can and hold them dearly and say a pray[er] to God that their eyes never have to look upon the horror that these kids have because you now know how fleeting life can be and how quickly somebody can be taken away, somebody with the cruel, evil intent that this defendant had."
(ii) Also in his closing argument during the trial's penalty phase, the prosecutor stated, "I would like to tell you why, in our opinion based on the evidence in this case, that this defendant deserves the death sentence."
(iii) In his closing argument during the trial's guilt phase, the prosecutor made the following comment on Stickley's testimony: "The woman broke down on the stand three separate times which simply indicates that she has a conscience, unlike her boyfriend, because when she was on the stand telling you about the nightmares and telling you about how she feared for [the victim's children] that she didn't even know, and everybody in this courtroom had tears rolling from their eyes, the only pair of dry eyes in this courtroom were this man's right here [pointing to the defendant]."
The motion court ruled that the failure of petitioner's trial counsel to object to any of the statements was not ineffective assistance of counsel. The Missouri Supreme Court affirmed. Examining the first statement, the state supreme court held that petitioner had not overcome the presumption that counsel's failure to object was a strategic choice. The court also found that petitioner had not established prejudice as a result of counsel's failure. Although the court recognized that the prosecutor had improperly personalized the argument, it determined that the comment was only an "isolated reference." As to the second statement, the state supreme court held that a prosecutor's opinion that the accused is guilty is permissible if it is based on evidence. The court stated, "One could not reasonably expect a prosecutor to present a case that he or she did not believe." The court also found proper the third statement, concerning petitioner's apparent lack of remorse. The court reasoned that the statement represented a reasonable inference from the record.
In reviewing claims of impropriety in a prosecutor's comments, a court must undertake a three-part analysis. The court first analyzes the comments themselves. If the court finds the comments to have been improper, the court then examines whether the prosecutor, by making the comments, the trial court, by failing to give a curative instruction, or defense counsel, by failing either to make a timely objection or to rebut the improper statements in his own penalty phase argument, diminished the jury's sense of responsibility in imposing the death penalty. Finally, if the impropriety was not cured by the prosecutor, the trial court, or the defense attorney, the court must examine the totality of the circumstances to determine whether there is a reasonable probability that the improper comments complained of affected the trial's outcome. Newlon v. Armontrout, 885 F.2d 1328, 1335-38 (8th Cir. 1989); cert. denied, 497 U.S. 1038, 110 S.Ct. 3301, 111 L.Ed.2d 810 (1990). The court must at all times keep in mind that the fundamental showing required of a habeas petitioner is that the alleged improprieties were "so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair." Moore v. Wyrick, 760 F.2d 884, 886 (8th Cir.1985); see Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).
Even assuming that the prosecutor's two statements during the penalty phase were improper, the Court finds that the prosecutor's remarks were not egregious or pervasive enough to render unreliable the jury's decision to impose the death penalty. Parkus v. Delo, 33 F.3d 933, 941 (8th Cir.1994). In this case, the state produced compelling evidence of the defendant's guilt. Petitioner's accomplice testified against him at trial, and the jury reached a verdict of guilty in *999 just over three hours. In the penalty phase, the jury had to find the existence of at least one of the two aggravating circumstances listed in the instructions. The jury unanimously found both beyond a reasonable doubt. The jury then went on to find the existence of all eight of the aggravating circumstances (concerning previous offenses committed by petitioner) listed in Instruction 20. The jury returned its verdict assessing petitioner's punishment at death in a little over two hours. See United States v. Weise, 89 F.3d 502, 505 (8th Cir.1996) (assuming that prosecutor's statement during closing argument that stabbing deprived victim's son of his father and victim's sibling of his brother was improper, the remark was not constitutionally prejudicial where the government had produced strong evidence of defendant's guilt).
Petitioner claims that by making the third statement listed above during closing argument of the guilt phase, the prosecutor improperly commented on petitioner's failure to testify. The Eighth Circuit has explained that an indirect reference to an accused's decision not to testify is impermissible if it either (1) manifests the prosecutor's intention to call attention to the defendant's failure to testify, or (2) is such that the jury would naturally and necessarily take it as a comment on the defendant's failure to testify. Parkus, 33 F.3d at 940-41. In Six v. Delo, 94 F.3d 469 (8th Cir.1996), cert. denied, ___ U.S. ___, 117 S.Ct. 2418, 138 L.Ed.2d 182 (1997), the court of appeals considered whether a habeas petitioner's appellate counsel had been ineffective for failing to raise for plain error review trial counsel's failure to object to repeated statements made by the prosecutor during his closing argument at the penalty phase as to petitioner's demonstrated lack of remorse. The court concluded that "[b]ecause the comments about remorse were prefaced with a reference to the jury's observance of Six during the trial, we cannot say the prosecutor's comments about remorse were intended as anything more than remarks on Six's general demeanor in the courtroom, or that the jury would view the comments as anything more." Id. at 477. In this case as well, the prosecutor was referring specifically to petitioner's demeanor during the testimony of a single witness during the trial. Viewing the statement in context, the Court does not believe that the prosecutor made it with the intention of calling the jury's attention to petitioner's failure to testify or that the jury would necessarily interpret it as a comment on this failure.
After a thorough review of the entire record, the Court does not believe that the allegedly improper comments of the prosecutor which have been identified by petitioner could reasonably have affected either the jury's determination that the defendant was guilty or its decision to impose the death penalty. Furthermore, since petitioner's attacks on the prosecutor's statements are presented as ineffective assistance of trial counsel claims, the Court must consider whether trial counsel's failure to object to these statements may have constituted reasonable trial strategy. Counsel may have decided that objecting to these remarks would be counterproductive. Raising an objection might have simply annoyed the jury or called more attention to the statements themselves. See Mack v. Caspari, 92 F.3d 637, 643 (8th Cir. 1996), cert. denied, ___ U.S. ___, 117 S.Ct. 1117, 137 L.Ed.2d 317 (1997). Finally, as explained above, even if counsel's failure to object was unprofessional, petitioner cannot show that the outcome of his trial would have been any different.

(d) Suggestive Line-Up

Petitioner also contends that his trial counsel was ineffective for failing to object to Jarad Douglass's identification evidence because Jarad had picked defendant from an impermissibly suggestive line-up. The motion court found that the identification procedures used were not "unduly suggestive." The Missouri Supreme Court agreed, noting that "[a]ll of the individuals in the line-up were white males, who appeared approximately the same height, who wore the same jail uniform, and who all had mustaches." After reviewing the transcript, the Court concludes that petitioner's claim is without merit. Counsel filed pretrial objections to the line-up and objected at trial when Jarad testified. Additionally, petitioner's counsel cross-examined police officer Steven Lochhead, *1000 who assisted in conducting the line-up, concerning a photograph of that line-up:
Counsel: Isn't it true that Jeffrey Tokar is the only person there that has hair short above the collar in that line-up?
Lochhead: Yes, ma'am.
Counsel: Isn't it true that, with the exception of one person who may have somewhat of a five o'clock shadow, No. 4, that Jeffrey is the only one with a beard?
Lochhead: At least three of the individuals, from my recollection, had some kind of stubble that was visible through the window from where I was at that might not necessarily show on the photograph.
Counsel: But when you look at the photograph the stubble or the beard is not there; is that correct?
Lochhead: That's right.
Counsel: Is it also true that out of these five persons, Jeff is the only person with light hair?
Lochhead: It is possibly lighter than some of the others also.
Counsel also called as a witness Mary Anderson, an attorney with the Boone County Public Defender's office. Ms. Anderson was present during the line-up and testified as to her observations of the suggestiveness of the line-up.
The transcript thus adequately demonstrates that petitioner's counsel vigorously challenged the line-up. There is no evidence that the line-up was impermissibly suggestive or created a very substantial likelihood of irreparable misidentification. See Manson v. Brathwaite, 432 U.S. 98, 116, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). Through cross-examination and presentation of evidence, defense counsel questioned the reliability of the line-up and the jury was therefore able to evaluate this evidence critically. There is nothing from which to draw any inference that counsel was ineffective in this regard.

(f) Petitioner's Mental Capacity at the Time of the Crime

Petitioner's next ineffective assistance of trial counsel claim is that counsel failed to investigate and present mitigating evidence during the penalty phase that petitioner was suffering from paranoid personality disorder at the time of the crime. The state supreme court flatly rejected this claim, declaring, "Under Strickland, Tokar has failed to present any evidence that proves his trial attorneys were deficient in this regard." The Court agrees with this assessment. During the penalty phase, the defense called one of petitioner's first cousins, who testified that petitioner became more aggressive after he had been drinking, that petitioner had once been attacked by his stepfather, and that petitioner had told her he had been sexually molested by a neighbor. Petitioner's aunt testified that she had witnessed petitioner threaten to commit suicide one night when he was drunk. Petitioner's mother testified that one of her ex-husbands had once choked petitioner until she thought he was going to die. In addition, she testified that petitioner became frightened after he had been drinking. She related an incident in which she discovered petitioner sleeping on the floor surrounded by kitchen knives, following a night of drinking. She also confirmed that petitioner had been raped as a child.
Petitioner's counsel also called on two experts to testify. William Watson, a clinical toxicologist and professor at the University of Missouri, testified about the effect of alcohol and AIDS medications on the body, and stated that petitioner showed signs of being a chronic alcoholic. A.E. Daniel, a boardcertified psychiatrist, then testified regarding his interviews of petitioner, which lasted a combined total of over seven hours. Daniel testified that petitioner had "an underlying paranoid personality disorder and under the influence of alcohol, he could become a fullblown paranoid." In sum, contrary to petitioner's claim, his counsel presented ample evidence of his alleged mental disorder, as well as of a troubled upbringing that might have contributed to such a disorder. Counsel's performance was in no way deficient.

*1001 (g) Petitioner's Competence to Stand Trial

Petitioner's last ineffective assistance of trial counsel claim alleges that counsel failed to investigate and present evidence that petitioner was suffering from paranoid personality disorder at the time of the trial which rendered him incompetent to proceed. The Missouri Supreme Court refused to consider the merits of this claim, finding that the claim was not adequately raised in petitioner's pro se post-conviction relief motion, his amended post-conviction relief motion, or his appellate brief. Petitioner argues that the issue "was briefed to some degree" and was raised in petitioner's motions for rehearing and to recall the mandate. For the reasons discussed above, neither motion may be used to preserve an ineffective assistance of trial counsel claim not raised in the post-conviction relief motion. Accordingly, consideration of the claim is barred unless petitioner can demonstrate either cause and prejudice or a fundamental miscarriage of justice.
Petitioner asserts as cause his mental illness at the time of the post-conviction proceeding. In his traverse, petitioner states that the nature of this illness "made it impossible for his post-conviction counsel to develop this issue," and that this constitutes cause. As mentioned above, however, cause exists when "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray, 477 U.S. at 488. In this case, a review of the record should have alerted petitioner's post-conviction counsel to this claim. In its opinion, the state supreme court quoted extensively from a hearing that took place a week prior to the originally scheduled start of the trial. At the hearing, petitioner's counsel stated:
Judge, there is a belief by Dr. Cowan that there is some psychological disorder with Mr. Tokar. He has suggested, based on his test results, that Mr. Tokar go under psychiatric consultation. Mr. Tokar is HIV Positive, and depending on who you talk to, he either has active AIDS or he's on the verge of having AIDS. Accompanying that medical condition is some form of dementia. By the psychological testing that we have had conducted, we have reason to believe that perhaps his irrational behavior could be attributed to the HIV virus. We have some concern as to whether or not, given some of his recent statements to us, he is going to be cooperative with defense counsel; and even if he is or makes an effort to be cooperative, whether or not he will be able to effectively assist counsel during trial.
Petitioner's counsel also raised this issue in their second application for continuance of trial settings, dated February 22, 1993. In the application, counsel state, "Dr. Cowan has informed counsel that the MMPI-2 test results suggest diagnoses of paranoid disorder and schizophrenia and that the DSM-III-R test results suggest diagnoses of delusional disorder, paranoid traits/personality and schizophreniform disorder." Based on the foregoing, the Court finds that both the legal and factual bases of a claim that petitioner's trial counsel was ineffective for failing to investigate and present evidence that petitioner was suffering from a mental disease at the time of trial were readily available to petitioner's post-conviction counsel. Because petitioner cannot show cause for his procedural default as to this claim, the Court is barred from considering its merits.

Ground 2: Alleged Invalidity of Petitioner's Arrest
In his second ground for relief, petitioner argues that his arrest was invalid because no written probable cause statement supported the issuance of the warrant for his arrest. As petitioner acknowledges, this claim is barred by the rule of Stone v. Powell, in which the Supreme Court held that a state prisoner is not entitled to habeas relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at his trial, so long as the state provided an opportunity for full and fair litigation of that claim. 428 U.S. at 481-82. Petitioner suggests that Stone be overruled. This Court has no authority to do so even if it were so inclined.
Petitioner also argues that because he was incompetent at the time of trial he was not, in fact, provided with an opportunity for a *1002 full and fair hearing. The Court is inclined to agree with respondent that even if petitioner were correct in this argument, relief would be barred by Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). It is not necessary to reach that issue, however, for as set out in more detail in the discussion of ground 1(a) above, petitioner was in no way prejudiced by any potential fourth amendment violation in the warrant process. That is, although the warrant may have been defective, the evidence at trial shows that there was ample probable cause to arrest petitioner, even without a warrant. No evidence was discovered or introduced because of the invalid arrest warrant that would not have been otherwise discovered during further investigation.
Petitioner was simply not prejudiced by any alleged violation, so the Court need not decide whether incompetency provides an exception to Stone v. Powell, or whether such a ruling would be Teague-barred.

Grounds 3 and 4: Prosecutorial Misconduct
In his third and fourth grounds for relief, petitioner points to numerous statements made by the prosecutor in his opening statement and closing argument. Neither of these grounds was raised by petitioner in his direct appeal. Petitioner acknowledges that ground three is defaulted, but argues ineffective assistance of appellate counsel as cause to overcome this default. Petitioner claims that he preserved ground four by raising it in motions for rehearing and to recall the mandate. As explained earlier, neither motion can serve this purpose. Alternatively, petitioner argues ineffective assistance of appellate counsel as cause.
Ineffective assistance of appellate counsel can constitute cause to overcome a procedural default. Murray, 477 U.S. at 492. To prevail on an ineffective assistance claim, petitioner must show that counsel's performance was professionally unreasonable and that, but for this deficient performance, the outcome of the proceeding would have likely been different. Griffin v. Delo, 33 F.3d 895, 900 (8th Cir.1994) (citing Strickland, 466 U.S. at 694), cert. denied, 514 U.S. 1119, 115 S.Ct. 1981, 131 L.Ed.2d 869 (1995). Appellate counsel's conduct is to be evaluated in light of the circumstances of the case. Pollard v. Delo, 28 F.3d 887, 888-90 (8th Cir.), cert. denied, 513 U.S. 1003, 115 S.Ct. 518, 130 L.Ed.2d 423 (1994). Reasonable appellate strategy permits counsel to limit the appeal to those issues which counsel determines are most likely to be successful. Parker v. Bowersox, 94 F.3d 458, 462 (8th Cir.1996), cert. denied, ___ U.S. ___, 117 S.Ct. 1439, 137 L.Ed.2d 545 (1997).
Here, petitioner did not raise the prosecutor's statements in his motion for a new trial. The appellate court's review of these statements would therefore have been limited to plain error. Missouri v. Smart, 907 S.W.2d 275, 278 (Mo.Ct.App. 1995). Under Missouri law, an appellate court has discretion to review plain errors affecting substantial rights, and will exercise this discretion only when it has "substantial grounds for believing that `manifest injustice or miscarriage of justice has resulted'" therefrom. Missouri v. Brown, 902 S.W.2d 278, 284 (Mo. banc) (quoting Mo. R.Crim. P. 30.20), cert. denied, 516 U.S. 1031, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995). In light of the extremely limited and discretionary nature of plain error review, petitioner has not demonstrated either that his appellate counsel's decision not to raise these grounds was objectively unreasonable, or that it affected the outcome of his appeal. See Reese v. Delo, 94 F.3d 1177, 1185 (8th Cir.1996) (noting that appellate counsel's conduct was not unreasonable when counsel failed to raise issue that would have been reviewed at the court's discretion and for plain error), cert. denied, ___ U.S. ___, 117 S.Ct. 2421, 138 L.Ed.2d 185 (1997). In other words, petitioner can demonstrate neither cause nor prejudice. Because he needs to show both to prevail, he obviously cannot succeed here. Accordingly, the Court will deny grounds three and four of the petition as procedurally barred.

Ground 5: Prosecutor's Use of an Improper Analogy During Voir Dire
Petitioner argues that the prosecutor's use of an improper analogy during jury selection *1003 limited the jurors' consideration of mitigating evidence at sentencing, thereby depriving petitioner of due process of law and subjecting him to cruel and unusual punishment in violation of the eighth and fourteenth amendments.
In examining the first panel of venirepersons, the prosecutor made the following statement:
If I could, ladies and gentlemen, if you would permit me, as an analogy and an analogy only, if you could envision in your mind a hallway that has three doors to it. This first door that you as a jury must confront is that guilt or innocence door. As I mentioned to you, the burden of proof in this case sits on our shoulders throughout this whole case. If we don't make our case according to the evidence and the Instructions of the law, if we don't prove that someone is guilty beyond a reasonable doubt of first degree murder, then you leave that door shut, and we don't have to worry about the death penalty. But if we prove our case, if we prove those elements that someone knowingly caused another person's death with deliberation, with cool reflection, if we prove our case, then you open that first door and walk on down the hallway and then there's a second door. This is a door I like to give the name of special circumstances. Because you see, ladies and gentlemen, not every murder case is one in which the death penalty is a possible punishment. There has to be something special about a murder case. There has to be some circumstances that we call aggravating circumstances, a list of them, and there has to be at least one of those. We have to prove to your satisfaction that at least one of these special circumstances exists. If we don't prove it, then that door stays shut; and you don't have to confront the decision about the death penalty. But if we heap our burden on that special circumstance and you open that door and then you walk down the hallway, then the third and final door is the door of the death penalty. I want to tell you, a lot of times people have a question about that.
The law never says, "Ladies and gentlemen of the jury, you have to open that third door." The law never requires a jury to do it. You are always given the option as a jury to vote for life without parole. You never have to open that third door.
Petitioner contends that this explanation of the trial process was improper in that it omitted any reference to mitigating circumstances. Petitioner acknowledges that the prosecutor did eventually mention the concept of mitigating circumstances, but observes that this did not occur until the venirepersons' understanding of the three doors was well under way.
Assuming that the prosecutor's description of the three doors was improper, petitioner bears the heavy burden of showing that this impropriety was so egregious that it fatally infected the proceedings and rendered his sentence fundamentally unfair. Darden, 477 U.S. at 181. Petitioner must demonstrate a reasonable probability that but for the error complained of, the jury would probably have chosen to sentence him to life in prison. See Jones v. Jones, 938 F.2d 838, 844-45 (8th Cir.1991). It is clear from the record that petitioner can make no such demonstration.
As petitioner admits, the prosecutor did mention mitigating circumstances in his questioning of the venirepersons. In explaining the concept, he stated, "What it means is evidence in someone's favor. In other words, there's evidence of aggravation but then on the flip side of that coin is evidence that may be presented in someone's behalf to show you good things about him." Later on in his examination, the prosecutor stated that the process was
not something where you add up a list and say, "Well, the State's got five of these things and the defense doesn't have any. So, we've got to go for the one that has the most numbers." It could be ... that you may find that there are no mitigating circumstances in a person's behalf that you could still consider life without parole.
Still later in his examination, the prosecutor told the venirepersons,

*1004 There's one other point I want to make sure that everybody understands. If we prove our case and if we prove these special circumstances, and as I told you the law never says you have to open that third door. You never have to vote for it. The law never tells you that. You always have the option to turn away from that third door.
Because the prosecutor's description of the three doors was limited, involved only one of the two venire panels, and occurred two days before opening statements and five days before the trial's penalty phase, the Court believes that its effect was insignificant. See United States v. Armstrong, 112 F.3d 342, 344 (8th Cir.1997). Furthermore, the record indicates that the prosecutor himself cured the impropriety, if any, with his later remarks addressing mitigation.

Ground 6: Admission of Evidence that Petitioner has AIDS
In his sixth ground for relief, petitioner argues that the admission of evidence that he has AIDS violated his right to due process of law and to be free from cruel and unusual punishment in violation of the eighth and fourteenth amendments.
The prosecution called as its first witness in the penalty phase Benjamin Richardson, who had been in prison with petitioner prior to the murder at issue in this case. Richardson testified that he had a conversation with petitioner shortly before petitioner's release in March 1992. According to Richardson, petitioner believed that he was being released early either because of an error or for medical reasons. Richardson stated that petitioner told him that "he [petitioner] tested positive for HIV and he had nothing to lose; all he had to live was two years anyway, so there was not a damned thing you all could do to him."
Petitioner contends that this statement was irrelevant and prejudicial. The record indicates that the defense objected to Richardson's testimony prior to his taking the stand. The trial court overruled the objection after the prosecution argued that it was relevant to show petitioner's state of mind, i.e., that petitioner would have no qualms about killing someone during a burglary because he would have nothing to lose. The state supreme court held that the trial court did not err. Citing Missouri v. Six, 805 S.W.2d 159, 166 (Mo. banc), cert. denied, 502 U.S. 871, 112 S.Ct. 206, 116 L.Ed.2d 165 (1991), the court noted that Missouri law permits the use of character evidence in a trial's penalty phase. The court held that the evidence was relevant to counter the defense's theory that alcohol was the main catalyst in Tokar's crimes. The court also found that the statement "demonstrate[d] Tokar's lack of respect for the justice system and his victims, and the words reveal[ed] a purposeful intent to commit future crimes."
"Federal courts are not forums in which to relitigate state trials." Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). Questions of admissibility of evidence in state trials are matters of state law and generally do not constitute grounds for federal habeas relief. Manning-El v. Wyrick, 738 F.2d 321, 322 (8th Cir.), cert. denied, 469 U.S. 919, 105 S.Ct. 298, 83 L.Ed.2d 233 (1984). Thus, on habeas review of a state conviction, a federal court does not examine whether evidence was properly admitted under state law. Estelle v. McGuire, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Rather, review is "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Id. A federal court will reverse a state court evidentiary ruling "only if it `infringes upon a specific constitutional right or is so grossly or conspicuously prejudicial that it fatally infected the trial and denied the defendant the fundamental fairness that is the essence of due process.'" Maynard v. Lockhart, 981 F.2d 981, 986 (8th Cir.1992) (quoting Berrisford v. Wood, 826 F.2d 747, 749 (8th Cir.1987), cert. denied, 484 U.S. 1016, 108 S.Ct. 722, 98 L.Ed.2d 671 (1988)).
There is no specific constitutional right prohibiting disclosure of a person's HIV status at trial. The Court must therefore consider whether the state court's ruling allowing Richardson's testimony was so egregiously erroneous that it denied petitioner a *1005 fundamentally fair trial. The Court finds that even if the trial court's ruling was error, it did not violate petitioner's right to due process. First, Richardson was no model citizen. He admitted that he had been in jail for shooting a man and acknowledged that he was a professional burglar himself. Second, under cross-examination by petitioner's trial counsel, Richardson also stated that he had "no respect for our judicial system." Given Richardson's status as a convicted felon and Richardson's expressed contempt for the courts, the Court believes that his testimony was not so prejudicial that it fatally infected petitioner's trial. The jury may have disbelieved him entirely. The jury found numerous aggravating factors to support the imposition of the death penalty, and thus would have reached its decision even absent Richardson's statement.

Grounds 7-10: Penalty Phase Jury Instruction
Grounds 7 through 10 are somewhat related claims in which petitioner claims that the jury instructions given during the penalty phase of the trial violated his right to due process of law and to be free from cruel and unusual punishment in violation of the eighth and fourteenth amendments. To assist in analyzing these claims, the Court will here set out in full instructions 19 through 23.
Instruction 19
In determining the punishment to be assessed against defendant for the murder of John P. Douglass, you must unanimously determine whether one or more of the following aggravating circumstances exist:
1. Whether the murder of John P. Douglass involved depravity of mind and whether, as a result thereof, the murder was outrageously and wantonly vile, horrible, and inhuman. You can make a determination of depravity of mind only if you find that the defendant killed John P. Douglass after he was bound or otherwise rendered helpless by defendant and that defendant thereby exhibited a callous disregard for the sanctity of all human life.
2. Whether the murder of John P. Douglass was committed while the defendant was engaged in the perpetration of burglary. A person commits the crime of burglary when he knowingly enters unlawfully in a building or inhabitable structure for the purpose of committing stealing.
You are further instructed that the burden rests upon the State to prove at least one of the foregoing circumstances beyond a reasonable doubt. On each circumstance that you find beyond a reasonable doubt, all twelve of you must agree as to the existence of that circumstance.
Therefore, if you do not unanimously find from the evidence beyond a reasonable doubt that at least one of the foregoing circumstances exist, you must return a verdict fixing punishment of the defendant at imprisonment for life by the Division of Corrections without eligibility for probation or parole.
Instruction No. 20
If you have found beyond a reasonable doubt that one or more of the aggravating circumstances submitted in Instruction No. 19 exist, then, in determining the punishment to be assessed against the defendant for the murder of John P. Douglass, you may also consider:
1. Whether the defendant pled guilty to driving while intoxicated on July 28, 1983, for events occurring on May 17, 1983, in the Circuit Court of Boone County, Missouri.
2. Whether the defendant pled guilty to driving with excessive blood alcohol content on July 28, 1983, for events occurring on July 4, 1983, in the Circuit Court of Boone County, Missouri.
3. Whether the defendant pled no contest to the class A misdemeanor of battery on January 14, 1983, in the Circuit Court of Dane County, Wisconsin.
4. Whether the defendant pled no contest to the offense of operating a motor vehicle while under the influence of an intoxicant on January 23, 1985, in the Circuit Court of Dane County, Wisconsin.
5. Whether the defendant pled guilty to the class D felony of driving while intoxicated *1006 on March 27, 1989, in the Circuit Court of Boone County, Missouri.
6. Whether the defendant pled guilty to the felony of stealing without consent on May 30, 1989, in the Circuit Court of Boone County, Missouri.
7. Whether the defendant pled guilty to the class B misdemeanor of peace disturbance on November 2, 1990, in the Circuit Court of Boone County, Missouri.
8. Whether the defendant pled guilty to the felony of receiving stolen property on November 4, 1991, in the Circuit Court of Boone County, Missouri.
You are further instructed that the burden rests upon the state to prove the circumstances beyond a reasonable doubt. On each circumstance that you find beyond a reasonable doubt, all twelve of you must agree as to the existence of that circumstance.
Instruction No. 21
If you find and believe from the evidence beyond a reasonable doubt that one or more of the aggravating circumstances submitted in Instruction No. 19 exist, it will then become your duty to decide whether the aggravating circumstances are sufficient to warrant the imposition of death as punishment of the defendant. In deciding that question, you may consider:
1. All of the evidence relating to the murder of John P. Douglass.
2. Any of the aggravating circumstances referred to in Instruction No. 19 which you found beyond a reasonable doubt.
3. Any of the aggravating circumstances referred to in Instruction No. 20 which you found beyond a reasonable doubt.
If you do not unanimously find from the evidence beyond a reasonable doubt that those aggravating circumstances you have found warrant the imposition of death as defendant's punishment, you must return a verdict fixing his punishment at imprisonment for life by the Division of Corrections without eligibility for probation or parole.
Instruction No. 22
If you decide that one or more sufficient aggravating circumstances exist to warrant the imposition of death, as submitted in Instruction No. 19, each of you must then determine whether one or more mitigating circumstances exist which outweigh the aggravating circumstance or circumstances so found to exist. In deciding that question, you may consider all the evidence relating to the murder of John P. Douglass.
You may also consider:
1. Whether the murder of John P. Douglass was committed while the defendant was under the influence of extreme mental or emotional disturbance.
2. Whether the capacity of each defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.
You may also consider any circumstances which you find from the evidence in mitigation of punishment. It is not necessary that all jurors agree on the existence of the same mitigating circumstance. If each juror finds one or more mitigating circumstance sufficient to outweigh the aggravating circumstances found to exist, then you must return a verdict fixing defendant's punishment at imprisonment for life by the Division of Corrections without eligibility for probation or parole.
Instruction No. 23
You are not compelled to fix death as the punishment even if you do not find the existence of one or more mitigating circumstances sufficient to outweigh the aggravating circumstance or circumstances which you find to exist. You must consider all the circumstances in deciding whether to assess and declare the punishment at death. Whether that is to be your final decision rests with you.
In ground 7 petitioner contends that Instruction No. 21 is improper because it requires the jury to decide that the death penalty is appropriate based only on aggravating *1007 circumstances, and the jury is not told to consider the mitigating circumstances until the following instruction, after they have already decided that death is appropriate. In Ground 8 petitioner contends that the trial court should have instructed on "non-statutory" mitigating factors which were supported by the evidence. In ground 9 petitioner objects that one of the aggravating factors contained in Instruction No. 19 was unconstitutionally vague. In ground 10 petitioner asserts that the remaining aggravating factor cannot stand as a basis for the death penalty. The Missouri Supreme Court rejected each of these contentions. This Court will also reject these contentions for the reasons that follow.

Ground 7
In ground 7 petitioner contends that Instruction 21 is improper because "it does not provide for the consideration of mitigating circumstances in determining whether a sentence of death is appropriate." Petitioner complains that "the death decision is made ... solely on the basis of aggravating circumstances," and that jurors are not told that they should consider whether mitigating circumstances exist until the following instruction.
The Missouri Supreme Court characterized this complaint as one of timing. The court observed that any other sequence would not make sense: "The question whether mitigating circumstances exist does not logically present itself until the jury first finds the existence of at least one aggravating circumstance sufficient to warrant the death penalty."
Petitioner's argument is this: (1) it is instruction 19not 21that asked the jury to determine whether at least one statutory aggravating circumstance existed to make petitioner death-eligible; (2) once the jury made an affirmative determination as to instruction 19, it was told in instruction 20 that it might consider eight additional aggravating circumstances "in determining the punishment to be assessed"; (3) then, in instruction 21, it was told to consider both "all of the evidence relating to the murder" and (again) any of the aggravating circumstances listed in instructions 19 and 20 which it had found beyond a reasonable doubt in deciding "whether the aggravating circumstances are sufficient to warrant the imposition of death." Petitioner protests that this presentation was completely one-sided in that not until instruction 22 did the jury learn it might consider mitigating circumstances.
In reviewing a habeas challenge to jury instructions, the only question before the federal court is "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" Estelle, 502 U.S. at 72 (quoting Cupp v. Naughten, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)). A state is free to "shape and structure the jury's consideration of mitigation so long as it does not preclude the jury from giving effect to any relevant mitigating evidence." Buchanan v. Angelone, ___ U.S. ___, ___, 118 S.Ct. 757, 761, 139 L.Ed.2d 702 (1998). Here, the jury was specifically instructed that it might consider "any circumstances which [it] found from the evidence in mitigation of punishment." Although the Court agrees with petitioner that the sequence of instructions 19 through 22 somewhat favored the prosecution, it cannot conclude that the resulting sentence violated due process. Therefore, the Court will deny petitioner's seventh ground for relief.

Ground 8
In ground 8 petitioner contends that the trial court's refusal to instruct the jury as to specific nonstatutory mitigating circumstances while instructing the jury as to specific nonstatutory aggravating circumstances violated his rights to be free from cruel and unusual punishment and to due process of law in violation of the eighth and fourteenth amendments. Specifically, petitioner claims that the trial court committed constitutional error in rejecting petitioner's proposed Instruction B,[1] which stated:

*1008 If you decide that one or more sufficient aggravating circumstances exist to warrant the imposition of death, as submitted in Instruction No. ____, each of you must then determine whether one or more mitigating circumstances exist which outweigh the aggravating circumstance or circumstances so found to exist. In deciding that question, you may consider all of the evidence relating to the murder of John P. Douglass.
You may also consider:
1. Whether the murder of John P. Douglass was committed while the defendant was under the influence of extreme mental or emotional disturbance.
2. Whether the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.
3. Whether the Defendant is the product of an unstable home with no reliable father figure.
4. Whether the Defendant endured emotional and physical trauma as a child and during adolescence.
5. Whether the Defendant has been alcohol dependent since childhood.
6. Whether drinking alcohol has severe adverse effects on the Defendant.
7. Whether the Defendant had been drinking alcohol prior to the murder of John P. Douglass.
You may also consider any circumstances which you find from the evidence in mitigation of punishment.
It is not necessary that all jurors agree on the existence of the same mitigating circumstances. If each juror finds one or more mitigating circumstance sufficient to outweigh the aggravating circumstances found to exist, then you must return a verdict fixing defendant's punishment at imprisonment for life by the Division of Corrections without eligibility for probation or parole.
The Missouri Supreme Court denied petitioner's claim, holding that Instruction 22 "adequately cover[ed]" the jury's consideration of mitigating circumstances and that there was "no requirement that the jury be given a non-MAI list of nonstatutory mitigating circumstances." The court noted that the instruction's "may consider" language gave the jury discretion in weighing mitigating evidence.
The Missouri statute in effect at the time of petitioner's trial provided that the jury instructions should include statutory aggravating factors supported by the evidence, statutory mitigating circumstances supported by the evidence, and
(3) Any mitigating or aggravating circumstances otherwise authorized by law and supported by the evidence and requested by a party including any aspect of the defendant's character, the record of any prior criminal convictions, and pleas and findings of guilty and admissions of guilt of any crime or pleas of nolo contendere of the defendant; as well as all evidence received in the first stage of the trial.
Section 565.032.1(3), R.S.Mo. (before 1993 amendments).[2]
*1009 Instruction 22 follows the format of the Missouri Approved Instructions in effect at the time of the trial up to a point. The MAI form lists the statutory mitigating circumstances and instructs the trial judge to select any that apply, as happened here with the two specific circumstances set out in Instruction 22. It then instructs the trial court to "set forth any other mitigating circumstances `otherwise authorized by law and supported by the evidence' requested by the defendant." See MAI Criminal § 313.44B. After this paragraph, the MAI form language provides the following language: "You may also consider any (other) circumstances which you find from the evidence in mitigation of punishment." The obvious contemplation is that if specific factors, statutory or otherwise, are listed, the word "other" would be included, but if no mitigating factors are specifically listed, the word "other" would be omitted. Here the word "other" was omitted, and no non-statutory factors were listed, even though both the state statute and the mandatory jury instructions indicated that they should have been included if requested and supported by the evidence. Thus, as submitted to the jury, the instruction did not point the jury to other specific mitigating evidence, but did state, "You may also consider any circumstances which you find from the evidence in mitigation of punishment."
While it is true that "the Constitution does not require a State to adopt specific standards for instructing the jury in its consideration of aggravating and mitigating circumstances," Zant v. Stephens, 462 U.S. 862, 890, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), the eighth and fourteenth amendments do "require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). Lockett's use of the word "consider" is of central importance to understanding the scope of the Constitution's mandate: neither the eighth nor the fourteenth amendment requires an instruction on specific mitigating factors or the concept of mitigation. Buchanan, ___ U.S. ___, ___, 118 S.Ct. 757, 762, 139 L.Ed.2d 702. "As long as the mitigating evidence is within `the effective reach of the sentencer,' the requirements of the Eighth Amendment are satisfied." Johnson v. Texas, 509 U.S. 350, 368, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993) (quoting Graham v. Collins, 506 U.S. 461, 475-76, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993)). Thus, an instruction directing the jury to base its decision on "all the evidence" is constitutionally sufficient. Buchanan, 118 S.Ct. at 762.
In this case, as the state supreme court observed, instruction 22 told the jury that it might consider "any circumstances which you find from the evidence in mitigation of punishment." Furthermore, as recounted above, petitioner's trial counsel called both expert witnesses and members of petitioner's family to testify in his behalf during the penalty phase. This evidence was before the jury, and it is improbable that the jurors forgot this testimony in the space of a few hours. See Buchanan, 118 S.Ct. at 762 (stating that it was "not likely" the jury would disregard two days of testimony relating to petitioner's family background and mental and emotional problems in making its decision). Finally, instruction 23 cautioned the jury that it was free to sentence petitioner to life imprisonment "even if [it did] not find the existence of one or more mitigating circumstances sufficient to outweigh the aggravating circumstance or circumstances which you find to exist." Upon review of the record, the Court concludes that the trial court's failure to offer the proffered instruction was not constitutionally erroneous.

*1010 Grounds 9 and 10

In deciding whether to impose the death penalty, the jury had to unanimously find at least one of the two aggravating circumstances set out in Instruction 19. The jury found both, and listed on its verdict form that it also found all of the circumstances listed in Instruction 20. Petitioner contends that although Instruction 19 defined the phrase "depravity of mind," it did not do so for the "outrageously and wantonly vile, horrible, and inhuman" language. Petitioner argues that the instruction was therefore unconstitutionally vague in violation of his rights under the eighth and fourteenth amendments. Petitioner does not challenge the validity of either the second aggravator contained in Instruction 19 or any of the aggravators contained in Instruction 20.
The state supreme court rejected petitioner's claim. It found that the instruction provided sufficiently specific guidance to the jury, and noted that in previous cases, it had found similar instructions not unconstitutionally vague. The court also observed that even if the first aggravator in Instruction 19 were invalid, the second aggravator, that the murder was committed while the defendant was perpetrating a burglary, was valid. Citing Missouri v. Sloan, 756 S.W.2d 503, 509 (Mo. banc 1988), cert. denied, 489 U.S. 1040, 109 S.Ct. 1174, 103 L.Ed.2d 236 (1989), the court stated, "A death sentence will be affirmed even if one valid statutory aggravating circumstance is found."
Ground nine of petitioner's petition is foreclosed by the Eighth Circuit's decision in Mercer v. Armontrout, 864 F.2d 1429 (8th Cir.1988), in which the court considered and rejected an objection to an instruction identical to the one that petitioner challenges here. In that case, after noting that the state appellate court had properly reviewed the jury's determination on the aggravator, the court stated, "Furthermore, the instruction required that in addition to outrageous or wanton and inhuman conduct, there must be a finding of depravity of mind. This requirement distinguishes the instant case from [Maynard v. Cartwright, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988)], in which the instruction only required a general finding that the murder was `especially heinous, atrocious, or cruel.'" Id. at 1435 (footnote omitted). The court held that the instruction "did not undermine the accuracy of the sentencing determination." Id. The instruction at issue here specifically defines "depravity of mind," and the Court therefore concludes that the instruction adequately channels the sentencer's discretion by clear and objective standards. Cf. Arave v. Creech, 507 U.S. 463, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993) (holding that aggravating circumstance of "utter disregard for human life" was not facially invalid when construed by state supreme court to refer to "cold-blooded, pitiless slayer").
Because the Court concludes that the instruction is not invalid, this Court need not decide whether the state supreme court was correct when it observed that it could uphold petitioner's death sentence on the basis of Instruction 19's remaining, undeniably valid aggravator. In ground ten of his petition, petitioner disputes that conclusion, claiming that Missouri is a "weighing" state. In Stringer v. Black, 503 U.S. 222, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992), Justice Kennedy, writing for the Court, contrasted the Mississippi and Georgia sentencing schemes to illustrate the distinction between "weighing" and "non-weighing" states. As he explained, under the law of Mississippi, a "weighing" state, "after a jury has found a defendant guilty of capital murder and found the existence of at least one statutory aggravating factor, it must weigh the aggravating factor or factors against the mitigating evidence." Id. at 229; Clemons v. Mississippi, 494 U.S. 738, 745 & n. 2, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990); see Richmond v. Lewis, 506 U.S. 40, 46, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992). By contrast, under the law of Georgia, a "non-weighing" state, although a jury must find the existence of one aggravating factor in order to impose the death penalty, "aggravating factors as such have no specific function" in determining whether a death-eligible defendant should in fact be put to death. Id. Rather, in rendering its decision as to the appropriate penalty, the jury must consider all circumstances from both the guilt and sentencing phases relating to *1011 both the crime and the defendant.[3]Id. at 230. In other words, "'the finding of an aggravating circumstance does not play any role in guiding the sentencing body in the exercise of its discretion, apart from its function of narrowing the class of persons convicted of murder who are eligible for the death penalty.'" Feltrop v. Delo, 46 F.3d 766, 771 (quoting Zant, 462 U.S. at 874 (1983), and describing Missouri's capital sentencing process)(emphasis added), vacated on other grounds, 516 U.S. 1006, 116 S.Ct. 559, 133 L.Ed.2d 486 (1995).
Because the sentencer in a "weighing" state must balance the aggravating circumstances that it finds against any mitigating evidence, a determination that even one aggravator was invalid requires the reviewing court to either remand the case for a new sentencing determination, reweigh the evidence itself, or conduct a harmless error analysis. See Richmond, 506 U.S. at 48-49. In a "non-weighing" state, "as long as the sentencing body finds at least one valid aggravating factor, the fact that it also finds an invalid aggravating factor does not infect the formal process of deciding whether death is an appropriate penalty." Stringer, 503 U.S. at 232.
As the Eighth Circuit has repeatedly observed, Missouri is a "non-weighing" state. E.g., Kilgore v. Bowersox, 124 F.3d 985, 992 (8th Cir.1997); Sloan v. Delo, 54 F.3d 1371, 1387 (8th Cir.1995), cert. denied, 516 U.S. 1056, 116 S.Ct. 728, 133 L.Ed.2d 679 (1996); Sidebottom v. Delo, 46 F.3d 744, 756 (8th Cir.), cert. denied, 516 U.S. 849, 116 S.Ct. 144, 133 L.Ed.2d 90 (1995); LaRette v. Delo, 44 F.3d 681, 687 n. 4 (8th Cir.) (citing Missouri v. Shaw, 636 S.W.2d 667, 675 (Mo. banc), cert. denied, 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982); Missouri v. Bolder, 635 S.W.2d 673, 683 (Mo. banc 1982), cert. denied, 459 U.S. 1137, 103 S.Ct. 770, 74 L.Ed.2d 983 (1983), cert. denied, 516 U.S. 894, 116 S.Ct. 246, 133 L.Ed.2d 172 (1995)). Petitioner argues that while Missouri may be a "non-weighing" state in theory, it did not act as one in his case. He observes that the narrowing function described by the Zant Court was accomplished when the jury found the two aggravating circumstances listed in Instruction 19. Upon that finding, petitioner contends, aggravating circumstances should have dropped from the picture  assuming Missouri to be a "non-weighing" state. That did not happen: instruction 20 listed eight additional specific aggravating circumstances for the jury to consider; instruction 21 then directed the jury that it might consider "any of the aggravating circumstances" listed in instructions 19 and 20 in determining "whether the aggravating circumstances are sufficient to warrant the imposition of death." Finally, instructions 22 and 23 explicitly told the jury to "weigh" the aggravating and mitigating circumstances. Instruction 22's first sentence read, "If you decide that one or more sufficient aggravating circumstances exist to warrant the imposition of death ..., each of you must then determine whether one or more mitigating circumstances exist which outweigh the aggravating circumstance or circumstances so found to exist." (emphasis added). Instruction 23's first sentence read, "You are not compelled to fix death as punishment even if you do not find the existence of one or more mitigating circumstances sufficient to outweigh the aggravating circumstance or circumstances which you find to exist."[4] (emphasis added). While *1012 the Court believes that petitioner's complaint may be well-founded, it need not resolve the issue, given its conclusion as to the validity of the only aggravator challenged by petitioner (i.e., the "outrageously and wantonly vile, horrible, and inhuman" circumstance).
That conclusion also disposes of petitioner's alternative contention regarding the Supreme Court's decision in Tuggle v. Netherland, 516 U.S. 10, 116 S.Ct. 283, 133 L.Ed.2d 251 (1995). In that contention, petitioner accepts (for the sake of his argument) that Missouri is a "non-weighing" state. Tuggle, he asserts, stands for the proposition that even in a "non-weighing" state, the finding of a valid statutory aggravator does not necessarily cure the finding of an invalid aggravator. As the Court has rejected petitioner's challenge to the "outrageously and wantonly vile, horrible, and inhuman" aggravator (and petitioner has objected to no other), petitioner's argument is at a dead end. Furthermore, assuming, arguendo, that petitioner were correct in his argument that the instruction was unconstitutionally vague, whether a death sentence may be upheld on the basis of a valid aggravator depends on the reasons why the other aggravator was found to be invalid. See id. at 12-14, 116 S.Ct. at 285. Unless the invalid aggravator was based on inadmissible evidence or the defendant was precluded from adducing relevant mitigating evidence, the valid aggravator will support the sentence. Id. Neither of those exceptions applies here.

Ground 11: Proportionality Review
Petitioner claims that the Missouri Supreme Court's application of the state statute mandating proportionality review of death sentences violated his right to be free from cruel and unusual punishment and to due process of law in violation of the eighth and fourteenth Amendments. Petitioner observes that in its proportionality analysis, the Missouri Supreme Court determined the issue of proportionality by reference to cases involving arguably similar circumstances in which the death penalty was imposed. Petitioner points out that the statute does not direct the court to consider only cases in which the death penalty was imposed and upheld, and argues that such an analysis can logically lead only to an increasing pool of death-eligible cases. Petitioner contends that under a more equitable approach, the reviewing court should first determine the elements which led to the death sentence in the case at bar and then identify companion cases using a case selection method. Under this approach, petitioner argues, the court would consider not only cases involving a murder during the course of a robbery in which death sentences were imposed and affirmed, but also cases in which life sentences were imposed where the victim was murdered while being robbed. Petitioner further complains that comparing his case to cases in which the victim was murdered during the course of a robbery does not comport with the statute, which mandates a comparison with "similar" cases. Petitioner points out that his case involves a murder which took place during a burglary  not during a robbery.
Although the eighth amendment's ban on cruel and unusual punishment does not prohibit the death penalty, it does prohibit death sentences that are disproportionate for certain crimes or individuals. Under Eighth Circuit law, a federal habeas court's examination of the proportionality issue is extremely circumscribed. The court's inquiry is limited to determining whether the state supreme court addressed and decided the issue in its opinion. Zeitvogel v. Delo, 84 F.3d 276, 284 (8th Cir.), cert. denied, ___ U.S. ___, 117 S.Ct. 368, 136 L.Ed.2d 258 (1996). If that court concluded that the penalty is not disproportionate to the penalty imposed in similar cases, the Constitution "`does not require [the habeas court] to look behind that conclusion.'" LaRette, 44 F.3d at 688 (quoting Walton v. Arizona, 497 U.S. 639, 656, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990)). Because the Missouri Supreme Court conducted a proportionality review and determined that this sentence was not disproportionate to that in similar cases, this Court may not further review this claim, and petitioner's eleventh ground for relief will be denied.

*1013 Ground 12: Ineffective Assistance of Appellate Counsel

In his twelfth ground for relief, petitioner cites six instances in which he claims he was denied effective assistance of appellate counsel. Criminal defendants have a constitutional right to effective assistance of counsel on their first direct appeal of right. Boliek, 96 F.3d at 1073. In reviewing claims of ineffective assistance of appellate counsel, courts apply the familiar test enunciated by the Supreme Court in Strickland and already described above.
As petitioner admits in his traverse, claims (a), (e), and (f) relate to whether appellate counsel should have challenged the performance of petitioner's post-conviction counsel. Because there is no constitutional right to post-conviction counsel, there is also no constitutional right to the effective assistance of that counsel. Lowe-Bey, 28 F.3d at 820. Although petitioner points out that a single attorney was appointed to represent him in the consolidated appeal of his conviction and the denial of his post-conviction relief motion, the Eighth Circuit has stated that "there is no right to the effective assistance of Rule 29.15 counsel even when the same individual acts as Rule 29.15 counsel and direct-appeal counsel." Oxford v. Delo, 59 F.3d 741, 748 (8th Cir.1995), cert. denied, 517 U.S. 1124, 116 S.Ct. 1361, 134 L.Ed.2d 528 (1996).
Respondent contends that because petitioner did not raise claims (b), (c), and (d) in his motion for a new trial, they would have been subject only to plain error review even if they had been raised on appeal. Petitioner admits that respondent is correct as to claim (c), but not as to claims (b) and (d). Upon a review of petitioner's motion for a new trial, the Court agrees with respondent that claims (b) and (c) were not properly preserved by petitioner at the trial level. Accordingly, they would have been at best subject to plain error review. As mentioned earlier, appellate counsel is not ineffective for failing to raise an issue that would have been reviewed at the court's discretion and, even then, only for plain error. Reese, 94 F.3d at 1185.
The Court does not agree with respondent that claim (d) was not preserved for appellate review. The very nature of the claim refutes such an idea. As the state supreme court observed, it is statutorily required to review all death sentences. In conducting this review, that court must determine, inter alia, "whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime, the strength of the evidence and the defendant." Mo.Rev.Stat. § 565.035.3(3). Petitioner contends that appellate counsel was ineffective for failing to present the Missouri Supreme Court with any examples of similar cases resulting in life imprisonment. Petitioner asserts in his traverse that there exist at least fifteen similar cases in which a life sentence was imposed in lieu of the death penalty. The Court has reviewed these fifteen cases. Unlike the present case, none of them involve a murder witnessed by young children of the victim. In at least two of them, Missouri v. O'Brien, 857 S.W.2d 212 (Mo. banc 1993); Missouri v. Baker, 607 S.W.2d 153 (Mo. banc 1980), the defendant did not do the actual killing. In others, there was conflicting evidence as to who was directly responsible for the murder, Missouri v. Betts, 646 S.W.2d 94 (Mo. banc 1983); Missouri v. Boggs, 634 S.W.2d 447 (Mo. banc 1982), or the evidence did not indicate that the victim was rendered helpless prior to the murder. Missouri v. Clark, 913 S.W.2d 399 (Mo.Ct.App.1996). Petitioner has not demonstrated that he was prejudiced by his appellate counsel's failure to address the proportionality issue in petitioner's brief to the state supreme court.

Ground 13: Petitioner's Competence to Stand Trial
Petitioner's thirteenth ground for habeas relief alleges that petitioner was incompetent to proceed at trial. Petitioner notes that his trial counsel informed the court that a neuropsychologist, who had recently tested petitioner, had suggested that petitioner had some form of dementia. In addition, petitioner points to evidence offered by expert witnesses at the hearing on his post-conviction relief motion. These witnesses testified that because of his mental illness, paranoid *1014 personality disorder, petitioner's thinking is dominated by irrational delusions. Petitioner argues that because his illness prevented him from being able to trust even his own lawyers, he was incompetent to proceed at trial.
Although due process prohibits the trial and conviction of a mentally incompetent person, Drope v. Missouri, 420 U.S. 162, 172, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), absent some contrary indication, both state and federal trial judges may presume a defendant to be competent. Branscomb v. Norris, 47 F.3d 258, 261 (8th Cir.), cert. denied, 515 U.S. 1109, 115 S.Ct. 2260, 132 L.Ed.2d 266 (1995). Due process only requires that a criminal defendant be given a competency hearing when there is evidence raising a sufficient doubt as to whether he is competent to stand trial. Vogt v. United States, 88 F.3d 587, 590 (8th Cir.1996). While the trial court may consider a doubt expressed by the defendant's attorney, "such doubt alone is not enough to establish sufficient doubt." Branscomb, 47 F.3d at 261 (citing Griffin v. Lockhart, 935 F.2d 926, 929 (8th Cir.1991)). "[N]ot every manifestation of mental illness demonstrates incompetence to stand trial.... Similarly, neither low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial." Medina v. Singletary, 59 F.3d 1095, 1107 (11th Cir.1995) (internal quotations and citation omitted), cert. denied, 517 U.S. 1247, 116 S.Ct. 2505, 135 L.Ed.2d 195 (1996). In determining the issue of competence, trial courts should consider, among other things, evidence of irrational behavior, a defendant's demeanor, and any available medical evaluations. Weisberg v. Minnesota, 29 F.3d 1271, 1276 (8th Cir.1994), cert. denied, 513 U.S. 1126, 115 S.Ct. 935, 130 L.Ed.2d 880 (1995).
In its decision in this case, the state supreme court considered at length petitioner's claim that he was incompetent to stand trial. The court gave three reasons for concluding that the trial court had not erred in refusing to hold a competency hearing. First, the court noted that petitioner's counsel had neither moved for such a hearing nor presented any evidence of an actual mental disease or defect which would have impaired petitioner's ability to assist his counsel at trial. Second, the court found that the evidence presented at trial was "inconsistent with any possibility that [petitioner] was incompetent to stand trial." Third, the court observed that petitioner's behavior during the trial was entirely normal. After reviewing the record, this Court has no reason to question the supreme court's decision.
As mentioned above, on February 24, 1993, petitioner, through counsel, filed a second application for continuance of the trial setting. In that motion, petitioner stated,
Defendant was examined by neuropsychologist Dr. Dennis G. Cowan on February 12, 1993. Dr. Cowan informed defense counsel that in addition to neuropsychological tests, Mr. Tokar was administered the MMPI-2 and DSM-III-R tests. Dr. Cowan has informed counsel that the MMPI-2 test results suggest diagnoses of paranoid disorder and schizophrenia and that the DSM-III-R test results suggest diagnoses of delusional disorder, paranoid traits/personality and schizophreniform disorder. Dr. Cowan has recommended that Mr. Tokar undergo psychiatric consultation in order to confirm or rule out the diagnoses suggested by the MMPI-2 and DSM-III-R test results.
At the March 1 hearing on this continuance, defense counsel asked for a continuance until May 1 "to determine the extent that [the HIV] virus may have impaired [defendant's] ability and competence to stand trial." Although the judge initially denied the continuance, he granted it on March 5, and reset the trial for May 3. The supreme court found that thereafter petitioner's trial counsel never again raised the issue of petitioner's competency to stand trial and did not submit any psychological or psychiatric reports to the court prior to trial. Given this dearth of any concrete evidence as to petitioner's mental state, the trial judge was justified in presuming petitioner competent to stand trial.
Petitioner's competence to stand trial was also demonstrated by the testimony of his own expert during the trial's penalty phase. Dr. A.E. Daniel, a medical doctor specializing in psychiatry, testified that petitioner was of *1015 average intelligence and had an average vocabulary, average reasoning ability, and a well-preserved memory. He also acknowledged that during his interviews with petitioner, petitioner did not appear to have any cognitive disturbance, hallucinations, or problems with perception.
Finally, as the state supreme court noted, petitioner's conduct at trial was not in the least bit unusual. Prior to the defense resting, the trial court asked petitioner whether he wished to testify in his defense. Petitioner responded in the negative, acknowledged that the decision was his alone, and stated that he wished to follow the recommendations of his counsel. Later, after the pronouncement of sentence, the trial judge again addressed petitioner. Portions of this exchange appear below:
The Court: Do you understand your rights to file a post-conviction motion?
Defendant: I'll be able to file that motion within thirty days after I receive the transcript?
The Court: The Supreme Court Rules require that the motion must be filed no later than thirty days after the transcript has been filed with the Supreme Court.
. . . . .
The Court: Was there something you wanted to talk with [your trial counsel] about that you never had the opportunity to discuss with them?
Defendant: Well, Your Honor, due to the fact that I haven't had a chance to review their case following this, and the majority of the prosecution's case was based on evidence I never had a chance to review, and until this day, I still haven't had a chance to review that information because it was never gave to me.
. . . . .
The Court: During the trial of your case was there any action taken by your attorneys which you believe was improper?
Defendant: Do I think was improper?
The Court: Yes, sir.
Defendant: Well, I noticed that there was a couple of motions that were filed that were contrary to the law I thought, but I could be mistaken due to the fact I'm not a legal counsel.
The failure of petitioner's trial counsel to adduce any evidence of petitioner's mental condition prior to trial, the testimony of petitioner's own expert at trial, and the above exchange effectively demonstrate that petitioner's claim that he was incompetent to stand trial is meritless.

Ground 14: Petitioner's Competence at Post-Conviction Hearing
In his final ground for relief, petitioner claims that he was incompetent to assist his counsel during his post-conviction hearing, and therefore the determinations in that proceeding are not entitled to deference by this court. However, because the Constitution does not require states to provide a means of post-conviction review of state convictions, an infirmity in a state post-conviction proceeding does not raise a constitutional issue, and is therefore not cognizable in a federal habeas petition. Gee v. Groose, 110 F.3d 1346, 1351-52 (8th Cir.1997); Jolly, 28 F.3d at 54; Williams-Bey v. Trickey, 894 F.2d 314, 317 (8th Cir.1990), cert. denied, 495 U.S. 936, 110 S.Ct. 2183, 109 L.Ed.2d 511 (1990).

Request for Evidentiary Hearing
Petitioner has requested an evidentiary hearing as to "all contested factual issues" in his case. Petitioner specifically cites to (1) his claim that his trial counsel was ineffective for failing to object to petitioner's allegedly invalid arrest and for failing to investigate and present evidence as to petitioner's competence at the time of the crime and the time of the trial, (2) his claim that his arrest was invalid, and (3) his claim that his appellate *1016 counsel was ineffective for failing to raise certain ineffective assistance of trial counsel claims, for failing to adequately raise the issue of petitioner's allegedly invalid arrest, and for failing to adequately present the issue of petitioner's incompetence during the post-conviction proceeding; and (4) his claim that he was mentally incompetent to stand trial and to assist in his post-conviction proceeding.
The Antiterrorism and Effective Death Penalty Act of 1996 sharply constricted the circumstances in which a federal habeas court may order an evidentiary hearing. Section 2254(e)(2) of Title 28 now reads:
If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that 
(A) the claim relies on 
(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.
In reviewing petitioner's request for an evidentiary hearing, it is apparent that the request is essentially premised on petitioner's claim of mental incompetence. Petitioner has attached several affidavits to his request for an evidentiary hearing which support his contention that he was and is suffering from various mental disorders. As discussed above, however, the record clearly indicates that the facts underlying this claim could have been previously discovered through the exercise of due diligence. This issue was raised and examinations of petitioner were conducted prior to petitioner's trial. Even assuming that this information was not discoverable at the time of petitioner's trial, the Court does not believe that these facts are sufficient to establish "by clear and convincing evidence" that no rational trier of fact would have found petitioner guilty or that the sentence imposed would have been different. The Court will therefore deny petitioner's request for an evidentiary hearing.

Certificate of Appealability
To grant a certificate of appealability, the Court must find a substantial showing of the denial of a federal constitutional right. See Tiedeman v. Benson, 122 F.3d 518, 522 (8th Cir.1997). A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. Cox v. Norris, 133 F.3d 565, 569-70 (8th Cir.1997) (citing Flieger v. Delo, 16 F.3d 878, 882-83 (8th Cir.), cert. denied, 513 U.S. 946, 115 S.Ct. 355, 130 L.Ed.2d 309 (1994)). Here the undersigned does not believe that petitioner has made such a showing, except with regard to the issues related to the penalty phase jury instructions. Because the Court believes that reasonable jurists might disagree with the resolution contained herein of grounds 7 through 10, this Court will issue a certificate of appealability with regard to those claims only, and will not issue a certificate with regard to any of the other grounds.
Accordingly,
IT IS HEREBY ORDERED that the petition of Jeffrey Lane Tokar for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [# 15] and his request for an evidentiary hearing [# 14] are denied, as is his ex parte request for funds to hire an expert [# 0].
IT IS FURTHER ORDERED that as to grounds 7 through 10 the Court will issue a certificate of appealability; as to all other grounds petitioner has not made a substantial showing of the denial of a constitutional right, and so this Court will not issue a certificate of appealability.
NOTES
[1] Proposed Instruction B was not contained in the copy of petitioner's legal file submitted to this Court, and, apparently was not provided to the Missouri Supreme Court either. On December 31, 1997, this Court issued an order requiring both parties to file a copy of the instruction as a supplement to the record. Both parties complied with that order. Respondent asserts, however, that petitioner's failure to present the instruction to the Missouri Supreme Court constituted a procedural default. Citing Keeney v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992), respondent argues that this Court may not consider the instruction absent a showing of cause and prejudice. This argument is meritless. In Keeney, the Supreme Court held that a habeas petitioner's failure to develop a claim in state court proceedings will be excused and an evidentiary hearing mandated only if he shows (a) cause and actual prejudice or (b) that a fundamental miscarriage of justice would otherwise result. Id. at 12. Keeney does not apply in this case because despite petitioner's evidentiary shortcoming, the Missouri Supreme Court addressed petitioner's argument on its merits; that is, it treated petitioner's claim as though it had Instruction B before it. Thus, habeas review is not barred. Ylst v. Nunnemaker, 501 U.S. 797, 801, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) ("If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available."); Bannister, 4 F.3d at 1441.
[2] Shortly after this case was tried, Missouri revised its death penalty statute, and the state law now provides that

... the trier shall consider all evidence which it finds to be in aggravation or mitigation of punishment, including evidence received during the first stage of the trial and evidence supporting any of the statutory aggravating or mitigating circumstances set out in subsections 2 and 3 of this section. If the trier is a jury, it shall not be instructed upon any specific evidence which may be in aggravation or mitigation of punishment, but shall be instructed that each juror shall consider any evidence which he considers to be aggravating or mitigating.
§ 565.032.1(2). The pattern jury instructions were likewise revised.
[3] The three dissenting justices in Stringer agreed with this description: "Under the Georgia sentencing scheme, a defendant is given a life sentence unless the jury finds one or more aggravating circumstances. Once the jury does that, aggravating circumstances no longer play a role: the jury is instructed to determine whether the defendant should receive a death sentence by considering all the evidence in aggravation and in mitigation." Id. at 239 (Souter, J., dissenting).
[4] Further support for petitioner's position can be found by comparing Instruction 22 with the portion of the Mississippi sentencing statute quoted by the Clemons Court in support of its description of Mississippi as a weighing state. Instruction 22 stated, in pertinent part, "If each juror finds one or more mitigating circumstance sufficient to outweigh the aggravating circumstances found to exist, then you must return a verdict fixing defendant's punishment at [life without the possibility of parole]." In Clemons, the Court stated, "Mississippi Code Ann. § 99-19-101(3)(c) (Supp.1989) provides that `[f]or the jury to impose a sentence of death, it must unanimously find ... (c) That there are insufficient mitigating circumstances, as enumerated in subsection (6) to outweigh the aggravating circumstances.'" 494 U.S. at 745 n. 2.